UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SALVADOR RAMOS, JR., as Personal
Representative of the Estate of MARIA
TERESA RAMOS, et al.,

    Plaintiffs,

        v.                                        CIV. NO. 10-198 JP/ACT

COOPER TIRE AND RUBBER
COMPANY, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Compel Plant Inspection filed September 3, 2010 [Doc. 51]. Defendant Cooper Tire & Rubber Company ("Cooper") filed a response on October 1, 2010 [Doc. 81] and Plaintiffs' filed a reply on October 15, 2010 [Doc. 92]. The Court permitted Cooper to file a sur-reply which it filed on November 8, 2010 [Doc. 116].

This lawsuit alleges wrongful death and personal injuries arising out of a vehicular accident. Plaintiffs allege that they were occupants in a 2000 Ford F-150 when the tread separated on the left rear tire and then the car overturned. They further allege that the left rear tire on the Ford F-150 was a Futura Adventurer H/T 2005, designed and manufactured by Cooper and marketed and distributed into commerce in the State of New Mexico by Defendant Pep Boys.

Plaintiffs are seeking an order of the Court permitting them to inspect the plant in which the alleged defective tire was manufactured. In support of their request, Plaintiffs in their reply attached an Affidavit of Troy Cottles ("Cottles"), their expert in this matter. [Doc. 92, Exh. G]. Cottles states that the allegedly defective tire was manufactured during the 5th week of production of 2005 at Cooper's Texarkana, Arkansas plant. He states that if he were able to inspect the plant he would be

able to determine if "the manufacturer compl[ied] with its own Quality Assurance guidelines and those guidelines generally recognized and implemented by others in the tire industry, both at the same time the tire was made and at the present time." *Id.*  He further states that:

> 14. ....Such issues would typically include the handling, storage and transport of tire materials, including raw materials and tire components, tire building equipment, handling and storage of completed tires – before they are vulcanized ("green tires") as well as after the are vulcanized.  Other issues may include post-vulcanized testing of tires for uniformity, as well as visual and tactile inspections before the tires are palletized for storage and/or shipment.  Further, based on many years of experience in the tire industry, I believe that a plant inspection will be valuable in describing for the juries the various plant processes that were presumably involved with the specific tire in the case at issue.
>
> ...
>
> 16. The plant conditions are pivotal in maintaining the skim.  If humidity levels are not ideal, the skim stock can have poor adhesion....
>
> 17. Since the bonding of steel to rubber is critical to tire performance, the calendering process is a critical step which needs precision and accuracy to be effective.
>
> ...
>
> 19. The techniques used by the tire builders, tolerances allowed and the splicing instructions provided has a direct effect on the quality control of the tire building process....
>
> 20. An inspection of the curing process will provide me information regarding the various repairs considered allowable to a cured tire [and] inform me of the age allowances for tires and the techniques for storage.
>
> ...
>
> 22. X-ray instructions and procedures will also be important and useful to demonstrate Cooper's knowledge of belt "snaking" or inconsistent applications on the tire, gripped belt splices, shifted (misaligned) belts and multiple splices within the belt....

In response, Cooper argues that their manufacturing processes and methods are trade secrets.  And that the conditions and processes at the plant have changed since 2005.  In support of this argument Cooper attached the Affidavit of Curtis D. Selhorst ("Selhorst").  Selhorst states:

> 7. ...the tire room has been completely reconfigured since 2005...[d]uring the major reconfiguration in 2006-20007, 88 machines were completely relocated.

8. New pieces of machinery and equipment have been added in the tire room since 2005, including machines with updated technology...[i]n 2009 Texarkana added 13 first stage tire building machines and 22 second stage tire buildings machines from the closed Albany, Georgia plant.

9. The mill room, where material preparation takes place, has been reconfigures to allow for the addition of new machinery...

10. ...The new curing area has new machines and technology, including 22 new curing presses and 38 curing presses transferred from the Albany, Georgia plant....

...

14. ...These unite improvements include, for example:
    (a) Cooper has a unique tread extruder at its Texarkana plant...
    (b)  ...Cooper's Texarkana plant has an automatic tread booker system similar only to its sister plant in Tupelo.
    ...
    (d) Cooper's second-stage tire manufacturing process was developed by Cooper from scratch...
    (e) Cooper has developed a unique process to assess the green tire before curing...

...

24. A plant inspection would compromise and completely frustrate the fundamental security system that Cooper utilizes to protect its trade secrets, "know-how", and other proprietary onsite information that it has developed over time and at substantial expense...

25. The highly proprietary and trade secret manufacturing processes and practices cannot be hidden from the plaintiffs' attorneys and experts if they are allowed access to the Texarkana plant....

In their reply Plaintiffs argue that Cooper has waived any trade secret protection by allowing tours on the plant. Cooper responded in its sur-reply that it modified its visitation guidelines in 2004 and now visitors are allowed access to the Texarkana plant only if : "(1) there is a specific compelling business purpose that cannot be achieved by alternative methods and (2) it is pre-approved by a few select members of plant management." [Doc. 116 at 6.] As to the tour given to the American Society of Mechanical Engineers in 1999, such tours are now prohibited. Cooper did give a limited tour to United States Representative Jim Jordan in 2008 to educate him on the

3

regulatory issues that were before Congress at the time.  As to the plant inspection in Albany in the *Middleton v. Cooper*, that inspection was ordered in a case pending in state court in South Carolina and has no precedential value in this Court.  It should also be noted that case involved different facts, a different tire design, a different plant, a different expert and an analysis with which this Court does not agree.

The Court will deny Plaintiffs' Motion.  Cooper has demonstrated that a tour would divulge trade secrets.  The Plaintiffs have not shown the required "heightened relevance" and "particularized necessity of the trade secret information." *Centurion Indus. Inc. V. Warren Steurer & Assoc.*, 665 F.2d 323, 325-6 (10th Cir. 1981).  In addition, Cooper has shown that the plant has changed significantly since the time of the manufacture of the allegedly defective tire.  In that regard, the Court agrees with the analysis in *Hajek v. Kumho Tire Co.*, 2010 WL 503044, at *11 (D. Neb. 2010):

> [A]s to plaintiffs' request to tour or inspect Kumho's manufacturing plant, the plant has changed since the accident tire was manufactured in 2005.  There is no showing that touring and assessing the plant's current structure, mechanisms, ventilation, or general cleanliness would be relevant or lead to discovering information relevant in determining why a tire manufactured in 2005 failed on August 17, 2006.

Furthermore, Cottles Affidavit does not demonstrate any particular need in this matter.  He has testified as an expert in over 70 tire cases and has never been allowed to inspect a tire manufacturing plant in the United States.[1]  In spite of not being allowed to inspect tire plants Cottles has rendered expert opinions in all of these cases, many of which involved Cooper.  Plaintiffs have offered no evidence that there is anything novel or unique about this case that would require an inspection of the plant where the tire was manufactured.

---

[1] Cottles was able to inspect a Hankook plant in Korea.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Plant Inspection [Doc. 51] is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**