# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

**SALVADOR RAMOS, JR., as
personal representative of the Estate
of MARIA TERESA RAMOS and the
Estate of SALVADOR RAMOS, SR,
TERESA RAMOS,
RAUL ALEJANDRO RAMOS, and
EDUARDO MORALES,**

      **Plaintiffs,**

**vs.**                                                          **10-CV-198 JAP/ACT**

**COOPER TIRE AND RUBBER CO.,
THE PEP BOYS MANNY, MOE & JACK
OF CALIFORNIA d/b/a The Pep Boys
Manny, Moe & Jack of California, Inc., and
FORD MOTOR COMPANY,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER
## OVERRULING PLAINTIFFS' OBJECTIONS TO ORDER (Doc. No. 110)

On November 1, 2010, Plaintiffs filed Plaintiffs' Objections to Order [Doc. No. 96] (Doc.

No. 110) (Objection). On November 16, 2010, Defendant Cooper Tire & Rubber Company

(Cooper) filed Defendant Cooper Tire & Rubber Company's Response To Plaintiffs' Objections

To Order (Doc. No. 125) (Response). In the Objection, Plaintiffs ask the Court to set aside an

Order issued by Magistrate Judge Alan C. Torgerson on October 18, 2010 (Doc. No. 96) (Order)

granting Defendant's Motion For Protective Order (Doc. No. 43). Because the Order is not

clearly erroneous or contrary to law, the Court will overrule the Objection.

1

I. Background

On May 17, 2009, Salvador Ramos, Sr. and Maria Teresa Ramos were killed in a rollover accident while occupying a Ford truck equipped with tires manufactured by Cooper and distributed by Pep Boys. On March 5, 2010, Plaintiffs, the relatives of Salvador Ramos, Sr. and Maria Teresa Ramos, including the personal representative of the Estates of Salvador Ramos, Sr. and Maria Teresa Ramos, filed this lawsuit against Defendants Cooper and The Pep Boys Manny, Moe & Jack of California (Pep Boys). On September 30, 2010, Plaintiffs filed a Second Amended Complaint For Damages (Doc. No. 69) against Cooper, Pep Boys and Ford Motor Company (Ford). The Second Amended Complaint alleges that the roll-over accident was caused by the failure of the left rear tire which suffered "tread separation." (*Id.* ¶ 7.)  Plaintiffs alleged that Cooper is liable for defective design, manufacturing and marketing of the tire, negligence in the manufacturing and marketing of the tire, breach of warranty of merchantability, and strict tort liability. The Court has diversity jurisdiction over this case. 28 U.S.C. § 1332 (a)(1).

On August 12, 2010, Cooper filed Defendant Cooper Tire & Rubber Company's Motion For Entry Of Protective Order (Doc. No. 43) (Motion For Protective Order) in which Cooper indicated that during discovery it would provide Plaintiffs materials containing trade secrets and valuable confidential information, but that Cooper would only provide such information under a proposed Order of Confidentiality. (*Id.* Ex. A.) Cooper included with its Motion For Protective Order the affidavit of Anthony E. Brinkman, who has been employed by Cooper since 1976 in several capacities related to tire technology. (*Id.* Ex. E.) Plaintiffs opposed the Motion For Protective Order and Cooper's proposed Order of Confidentiality. (Response To Defendant Cooper Tire & Rubber Company's Motion For Entry Of Protective Order Doc. No. 55.)

2

On October 18, 2010, Magistrate Judge Torgerson granted the Motion For Protective Order (Doc. No. 96) and on October 22, 2010, Magistrate Judge Torgerson entered Cooper's proposed Protective Order Of Confidentiality (Doc. No. 100) (Protective Order) with one minor change.[1]

The Protective Order contains the following provisions: (1) that confidential information is defined as information which Cooper contends in good faith is protected as a trade secret; (2) that Cooper must mark the documents they contend are confidential; (3) that information marked confidential may be examined by Plaintiffs' counsel, legal assistants and experts, but only if the person signs an Acknowledgment of Protective Order and Agreement To Be Bound (Protective Order Ex. A); and (4) that all documents and copies must be returned at the conclusion of this litigation. Most importantly, the Protective Order provides that access to confidential information is limited to certain defined "'authorized persons' solely in the performance of their duties in connection with trial preparation of this lawsuit." (*Id.* at ¶ 7.) Hence, under the Protective Order, Plaintiffs are not allowed to share information with litigants or attorneys involved in similar lawsuits against Cooper. Although Plaintiffs opposed the entry of a protective order, Plaintiffs submitted as an alternative their own proposed Protective Order of Confidentiality (Doc. No. 55 Ex. A), which included a provision allowing Plaintiffs attorneys to share all relevant information with "[o]ther similarly situated attorneys involved in the preparation of tread separation cases against Cooper Tire." (*Id.* ¶ 7.)

---

[1] Magistrate Judge Torgerson changed the deadline for the parties' to submit objections to the designation of materials as confidential from 120 days to 60 days before trial. (Doc. No. 100 at ¶ 6.)

II.  Standard of Review

Pre-trial discovery matters have been referred to the Magistrate Judges in this District. D.N.M. LR-Civ. 73.1(a). This Court reviews orders on pretrial matters to which objections have been filed under the standards set forth in Rule 72 and 28 U.S.C. § 636.

Rule 72 provides,

(a) **Nondispositive Matters.**  When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

Section 636 of title 28 provides:

(b)(1) Notwithstanding any provision of law to the contrary--
    (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A).

An order is clearly erroneous or contrary to law when, "on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). *See also Bertetto v. Eon Labs, Inc.*, No. 06-CV-1136, 2008 WL 2522571, *2 (D.N.M. May 29, 2008) (unpublished) (striking

4

provision in protective order allowing discovery sharing with non-parties as contrary to circuit law).

Rule 26 provides the standard for protecting confidential information produced during discovery in a civil case:

> © Protective Orders.
>> (1) A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, **for good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>> . . .
>>> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . .

Fed. R. Civ. P. 26 (c)(1)(G) (emphasis added). As stated by the Tenth Circuit in *Centurion Industries, Inc. v. Warren Steurer and Assoc.*,

> To resist discovery under Rule 26(c)(7),[2] a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. . . . If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. . . . The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.

665 F.2d 323, 325 (10th Cir. 1981) (citations omitted). The trial court has discretion to decide whether disclosure of trade secrets is relevant to the action and whether the necessity of disclosure outweighs the harm of disclosure. *Id.* at 326.

III. Discussion

Magistrate Judge Torgerson found that Cooper established "just cause" for an order protecting its trade secrets and other confidential information that could cause economic harm to

---

[2] Rule 26(c)(7) was renumbered and now appears as Rule 26(c)(1)(G).

Cooper if disclosed. (Order at 3-4) (citing *Centurion,* 665 F.2d at 325-26). Magistrate Judge

Torgerson rejected Plaintiffs' proposed Protective Order which allowed Plaintiffs to share

information produced in discovery, including trade secrets and confidential information, with

other litigants asserting claims against Cooper. Magistrate Judge Torgerson found that Cooper's

proposed Protective Order struck the right balance between protecting Cooper's trade secrets and

valuable confidential information with Plaintiffs' need to obtain discovery of unprivileged

information relevant to their claims. (*Id.*) This Court agrees that the Protective Order

appropriately balances Plaintiffs' right to obtain information under Rule 26 and Cooper's right to

be free from intrusive, burdensome discovery, and from unfair or inadvertent disclosure of

protected information. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000);

*Peterson v. Daimler-Chrysler Corp.*, No. 06-CV-108, 2007 WL 2391151, *3 (D. Utah Aug. 17,

2007) (unreported) (noting that magistrate judge had adopted co-defendant Cooper's form of

protective order to protect discovery materials containing trade secrets), *aff'd* 2007 WL 3286694

(D. Utah Oct. 29, 2007), *mandamus denied, In re Cooper Tire & Rubber Co.*, 568 F.3d 1180

(10th Cir. 2009).

A.  The Order Is Not Contrary To Law

Plaintiffs argue that the Protective Order is contrary to case law in New Mexico allowing

litigants to share information under "discovery-sharing guidelines." Plaintiffs cite *Pincheira v.

Allstate Ins. Co.*, in which the New Mexico Supreme Court reversed a default judgment entered

against Allstate for refusing to turn over materials that contained confidential trade secrets.

2008-NMSC-049, 144 N.M. 601, 190 P.3d 322 (2008). The New Mexico Supreme Court ruled

that the trial court had abused its discretion when the court denied Allstate's motion for

protective order after it made a good faith showing that the material contained trade secrets. *Id.* ¶

6

51. The court then provided guidance to the trial court for an order protecting Allstate's trade

secrets recognizing that, "[t]he specific terms of the actual orders remain within the trial court's

discretion and will depend on the circumstances of each case." *Id.* ¶ 65. The *Pincheira* court also

recognized that the plaintiff's right to disseminate information to other litigants should be

monitored under a protective order issued under New Mexico Rule 1-026 C (8),[3] a rule that is

virtually identical to Fed. R. Civ.  P. 26(c)(1)(G).  *Id.* at ¶¶ 25-26. Significantly, the court

recognized the value of limiting dissemination to parties and their counsel, "subject to the

discovery-sharing guidelines discussed below." *Id.* ¶ 67. Those guidelines were described as

follows:

> A protective order prohibiting discovery sharing can make other litigation more difficult,
> costly and less efficient. Costs are increased for the courts, the other litigants, and even
> the party opposing discovery. As a result, courts favor the collaborative use of discovery
> material to "further the goals of Rule 1 [of the Federal Rules of Civil Procedure; Rule 11-
> 102 NMRA] by eliminating the time and expense involved in re-discovery. Despite these
> benefits, insistence upon unlimited dissemination would take away the trial court's
> discretion to consider the potential abuses of discovery sharing when crafting its
> protective order.

*Id.* ¶¶ 71-72 (citations and quotation marks omitted). The *Pincheira* court recognized the value

of discovery sharing while protecting confidential information with a protective order once a

party has shown good cause for protection. *Id.* ¶ 47 ("[i]f the information is a trade secret, the

trial court should issue an appropriate protective order covering both pretrial proceedings and

post-trial dissemination."). The court held that because the defendant met its initial burden of

---

[3] C. Protective Orders. Upon motion by any party or interested person for good cause, the
court may make any order which justice requires to protect a party or person from annoyance,
embarrassment, oppression or undue burden or expense, including one or more of the following:
. . .
> (8) authorizing, prohibiting or limiting the discovery of a trade secret or other
> confidential research, development or commercial information . . .
NMRA 1-026 (c) (8).

making a good faith claim of a trade secret, the trial court abused its discretion when it denied

the defendant's request for an evidentiary hearing and for a protective order. *Id.* ¶ 51.

Plaintiffs cite *Pincheira* to support their argument that they should be allowed to

disseminate all discovery material with other litigants who execute a confidentiality agreement

in order to promote efficient and less costly litigation in other cases. However, Cooper correctly

contends that this Court is not bound by New Mexico decisions regarding interpretation of the

Federal Rules of Civil Procedure. Notably, the Protective Order is not contrary to *Pincheira*,

which recognized a trial court's discretion to craft a protective order that may allow discovery

sharing "where appropriate." *Id.* at ¶ 39. Moreover, other federal district judges in this district

with cases involving claims against Cooper have entered almost identical protective orders,

which limit the use of confidential information and prohibit discovery sharing. *See, e.g., Begay*

*v. The Pep Boys Manny, Moe and Jack of California and Cooper Tire & Rubber Company*, No.

09-CV-197 WDS/DJS, Protective Order Of Confidentiality (Doc. No. 38); *Blackshear v. Ford*

*Motor Co. et. al*, No. 07-CV-648 MCA/LFG, Protective Order Of Confidentiality (Doc. No. 48);

*Lujan v. Cooper Tire & Rubber Company*, No. 06-CV-0173 RHS/KBM, Protective Order Of

Confidentiality (Doc. No. 29). This Court agrees with Magistrate Judge Torgerson that

*Pincheira* is unpersuasive and does not convince this Court to overturn the entry of the

Protective Order in this case.

Plaintiffs further argue that the vast majority of federal courts have upheld sharing of

discovery of materials subject to confidentiality orders. However, this Court agrees with

Magistrate Judge Torgerson that the cases cited by Plaintiff are unpersuasive and

distinguishable. In *Cipollone v. Liggett Group, Inc.*, one of several cases brought against tobacco

companies by individuals harmed by smoking, the magistrate judge entered a protective order

prohibiting the plaintiff from disseminating or publicizing documents, testimony and other matters obtained through the discovery process. 106 F.R.D. 576 (D.N.J. 1985). The magistrate judge, however,  had not required defendants to show "good cause" for issuing the protective order, as required under Rule 26©. *Id.* at 578. The information sought to be shared with other litigants revealed the "knowledge of the tobacco industry regarding the effects of smoking, the steps taken to conceal and offset that knowledge, the efforts to enlist the aid of legislators and the medical profession to support the industry and mislead the public, and an alleged conspiracy of silence and chicanery within the industry itself." 106 F.R.D. at 576-77. For its part, the district court conducted a *de novo* review and reversed the magistrate judge's ruling because the order was not justified under Rule 26©; and also violated the First Amendment. *Id.* at 587. The district court stated that the defendants must prove "good cause" for issuing the protective order, as required under Rule 26©. *Id.* at 578. The district court issued its own protective order, which only restricted the use of confidential information and which required the defendant to obtain a court determination before designating materials as confidential. *Id.* at 584-85 (stating that defendants were entitled to protection from the disclosure of matters which are truly secret such as formulae, marketing strategy and "other matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business . . .").

The *Cipollone* plaintiffs sought a writ of mandamus from the Seventh Circuit Court of Appeals. The Seventh Circuit granted the writ on the basis of two plain errors, the district court's failure to apply proper standard to determine "good cause" for imposition of protective order under Rule 26© and its plenary review of the magistrate judge's order. *Cipollone v. Liggett*

*Group, Inc.*, 785 F.2d 1108, 1118 (3rd Cir. 1986).[4] The appellate court remanded to the district

court and provided guidance for its determination of "good cause" on remand. *Id.* at 1121.

Significantly, the defendants had not asserted that the material contained trade secrets but only

that the material would be "embarrassing" if released to the public. *Id.* The Seventh Circuit noted

that business entities "will have to show with some specificity that the embarrassment resulting

from dissemination of the information would cause a significant harm to its competitive and

financial position." *Id.* 1120-22. The court disapproved of the district court's requirement that

defendants seek a ruling on a document-by-document basis for every piece of information that

they claimed was confidential.  *Id.* at 1122. Instead, the court instructed the district court "to

construct a broad 'umbrella' protective order upon a threshold showing by one party (the

movant) of good cause," that allowed the opposing party to "indicate precisely which documents

it believed to be not confidential, and the movant would have the burden of proof in justifying

the protective order with respect to those documents." *Id.*

On remand, the district court ruled that the defendants had failed to demonstrate "good

cause" for a protective order prohibiting all discovery materials, including non-confidential

materials, from being disclosed to public or to plaintiffs in similar litigation. *Cipollone v. Liggett

Group, Inc.*, 113 F.R.D. 86, 89-90 (D.N.J. 1986). The district court also found that the

defendants failed to convince the court that dissemination of the information would prove so

embarrassing that it would lead to significant harm to defendants' competitive and financial

position. The defendants had argued that dissemination would affect the market price of

---

[4] The appellate recognized that it did not have jurisdiction over the interlocutory order, but that it could issue a writ of mandamus under the All Writs Act. *Id.* at 1117-18 (citing the All Writs Act, 28 U.S.C. § 1651(a)).

defendants' stock and would make it easier for other plaintiffs to sue them for products liability. *Id.* at 90. The district court approved the magistrate's umbrella protective order that allowed the defendants in good faith to initially mark materials as confidential and allowed plaintiffs to seek a ruling on confidentiality from the court. *Id.* at 94. Unlike the defendant in *Cipollone*, Cooper has met its burden to prove that the materials is seeks to protect are in fact trade secrets or confidential business information worth of protection under Rule 26(c)(1)(G).

In *Patterson v. Ford Motor Co.*, Ford had moved for a protective order to prevent the plaintiff from disseminating any information produced in discovery to other litigants pursuing products liability claims against Ford. 85 F.R.D. 152, 153 (W.D. Tex. 1980). Again, unlike Cooper, Ford did not contend that any of the material contained trade secrets or that Ford would have suffered a competitive disadvantage by revealing the information. *Id.* Ford's only concern was that "counsel for the Plaintiff is interested in developing and fomenting additional litigation against Ford Motor Company." *Id.* The court found that Ford had failed to establish that the material discovered contained trade secrets, and absent a showing that "the discovering party is exploiting the instant litigation solely to assist litigation in a foreign forum, federal courts [should] allow full use of the information in other forums." *Id.* at 154. In contrast, Magistrate Judge Torgerson found that Cooper met its burden to establish that the information sought to be protected would contain trade secrets and dissemination of the information would place Cooper at a competitive disadvantage.

Similarly, in *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28-30 (E.D. Mich. 1981), the court held that the defendant failed to show that the information contained trade secrets or that dissemination would cause defendant to incur serious competitive injury. And in *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982), the plaintiffs were allowed to share

11

discovery of information regarding a design defect, which was the cause for hundreds of injuries. But, the plaintiffs' counsel voluntarily agreed not to disclose any trade secrets acquired in discovery.

None of the above cases cited by Plaintiffs stands for the proposition that federal courts allow the sharing of discovery materials which a defendant has shown to contain confidential trade secrets. Plaintiffs correctly argue that courts should favor discovery sharing to promote the search for the truth, judicial economy, and justice, but these concerns should not override a good faith showing that dissemination of certain information would put Cooper at a competitive disadvantage.

### B. Cooper Has Not Abused Discovery Process

Plaintiffs have also failed to support with evidence their argument that Cooper has a pattern of discovery conduct aimed at hiding discoverable information behind deceptive confidentiality orders. Thus, the cases cited by Plaintiffs in which defendants withheld information such as crash tests and accident reports, are not persuasive. *See, e.g., Buehler v. Whalen*, 374 N.E.2d 460, 467 (Ill. 1977) (finding that Ford had withheld information on safety tests and gave false answers to interrogatories); *Gammon v. Clark Equipment Co.*, 686 P.2d 1102, 1107 (Wash. 1984) (ordering new trial for defendant's failure to produce requested accident reports); *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 480-85 (S.D. Fla. 1984) (holding that destruction of documents and failure to produce flight test documents and FAA certification documents warranted default judgment on liability).

### C.  Effect On Products Liability Cases

Plaintiffs next argue that the Order has a negative effect on products liability litigation in general because it increases the cost of litigation by allowing Cooper to relitigate the same issue

12

with other plaintiffs. A protective order prohibiting discovery sharing can "make other litigation more difficult, costly and less efficient." *Cipollone*, 113 F.R.D. at 87. As a result, courts favor the "[c]ollaborative use of discovery material" to "further the goals of Rule 1 [of the Federal Rules of Civil Procedure; Rule 11-102 NMRA] by eliminating the time and expense involved in 're-discovery'." *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 546 (N.D. Ind. 1991). The Protective Order, however, does not prohibit litigants from seeking this Court's permission to acquire information relevant to their claims. *See Cipollone*, 113 F.R.D. at 91 (requiring parties or collateral litigants who wish to share discovery to "seek leave of the court before whom the matter is pending."). Magistrate Judge Torgerson correctly found that a sharing provision undermines the reason for a protective order in the first place and puts the confidential information at risk of disclosure. (Order at 4.) In addition, the Order correctly notes that Plaintiffs' proposed order would have allowed access to the disseminated information by parties that are not subject to the jurisdiction of this Court. The Court has a duty to guard against potential abuses of discovery, and the Protective Order fulfills that duty. Thus, Magistrate Judge Torgerson's Order and Protective Order are not clearly erroneous or contrary to law.

### D.  The Brinkman Affidavit

Finally, Plaintiffs contend that the affidavit of Mr. Brinkman is insufficient to show good cause for the protection of trade secrets and confidential information because the affidavit contains conclusory statements concerning the existence of trade secrets. On the contrary, Mr. Brinkman's affidavit states that the tire manufacturing business is very competitive and that tires, unlike other products, cannot be reverse engineered;[5] thus, information regarding the

---

[5] "Reverse" engineering is the process by which a competitor determines a product's physical and chemical components by analyzing the finished product. (Brinkman Aff. (Doc. No.

13

chemical components and processes is very valuable to competitors who wish to bypass their own development process. (Brinkman Aff. (Doc. No. 43, Ex. E) ¶¶ 5-11.) Mr. Brinkman also testified about Cooper's stringent safeguards to prevent dissemination of confidential materials including restrictions on its employees, strict security measures, and limited access to its tire plants and corporate offices. (*Id.* ¶¶ 15-19.) Mr. Brinkman's affidavit describes why certain information should be protected, Cooper's policies designed to protect this information, and the cost to Cooper of inappropriate dissemination of the information to competitors. (*Id.* ¶¶ 23-27.) In sum, Mr. Brinkman's affidavit is sufficient to support the finding that Cooper has valuable confidential information worthy of protection concerning tire design/development information, tire testing documents, consumer relations documents, manufacturing processes and quality assurance. With the Brinkman affidavit, Cooper has met its burden to show good cause for the issuance of a protective order. Thus, Magistrate Judge Torgerson's Order and Protective Order are not clearly erroneous or contrary to law.

IT IS ORDERED that Plaintiff's Objections To Order [Doc. No. 96] (Doc. No. 110) are overruled.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

43, Ex. E) ¶ 10.)

14